



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

John A. Olagues, Pro Se
A shareholder of
Applied Materials Inc.

      Plaintiff

                    Private Right of Action
                    Under Section 16 b of the
                    Securities Act of 1934

V.                    Case #

Gary Dickerson Pres. and CEO of
Applied Materials Inc &
Applied Materials Inc

      Defendants

## COMPLAINT
## JURY TRIAL DEMANDED

1. Plaintiff, alleges, based upon knowledge with respect to the facts relating to defendants upon information and belief with respect to all other allegations, as follows:

## INTRODUCTION

2. This action is brought pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), [15 U.S.C. 78p(b)] ("Section 16(b)") in order to recover short-swing insider trading profits realized by defendant Gary Dickerson while he was a statutory insider and officer of Applied Materials Inc.

3. Gary Dickerson at all relevant times was the CEO of Applied Materials Inc. within the meaning of Section 16(b).

1

1

2

3   4. Section 16(b) requires company insiders to disgorge any profits earned by Section
    16 (b) insiders through short-swing insider trading (i.e., non-exempt purchases and
4   sales, or non-exempt sales and purchases, of the company's equity securities, within
5   less than a six month period). Actual misuse of inside information is not an element
    of the claim although the statute embodies a presumption that statutory insiders
6   have access to such inside information.

7
    5. The SEC is allowed to pass rules that exempt transactions that are "not
8   comprehended to be within the purpose of Section 16 b of the 1934 Securities Act as
9   stated in section 16(b) shown below:

10
    ***"(b) For the purpose of preventing the unfair use of information***
11  ***which may have been obtained by such beneficial owner, director, or***
12  ***officer by reason of his relationship to the issuer, any profit realized***
13  ***by him from any purchase and sale, or any sale and purchase,*** *of any*
    *equity security of such issuer (other than an exempted security) or a*
14  *security-based swap agreement involving any such equity security within any*
15  *period of less than six months, unless such security or security-based swap*
    *agreement was acquired in good faith in connection with a debt previously*
16  *contracted, shall inure to and be recoverable by the issuer, irrespective of any*
17  *intention on the part of such beneficial owner, director, or officer in entering into*
18  *such transaction of holding the security or security-based swap agreement*
    *purchased or of not repurchasing the security or security-based swap agreement*
19  *sold for a period exceeding six months.*

20
    *Suit to recover such profit may be instituted at law or in equity in any court of*
21  *competent jurisdiction by the issuer, or by the owner of any security of the issuer*
22  *in the name and in behalf of the issuer if the issuer shall fail or refuse to bring*
    *such suit within sixty days after request or shall fail diligently to prosecute the*
23  *same thereafter; but no such suit shall be brought more than two years after the*
24  *date such profit was realized.* ***This subsection shall not be construed to***
25  ***cover any transaction*** *where such beneficial owner was not such both at the*
    *time of the purchase and sale, or the sale and purchase, of the security or*
26  *security-based swap agreement or a security-based swap involved, or any*
27  *transaction* ***or transactions which the Commission by rules and***
28  ***regulations may exempt as not comprehended within the purpose of***
    ***this subsection."***

                                      *2*

1

2

3  The part allowing the SEC limited authority to make Rules for exemptions of Section 16
(b) is confirmed by the Court in Levy v. Sterling as below:

4

5  **United States Court of Appeals,Third Circuit.**

**Mark LEVY, Appellant v. STERLING HOLDING COMPANY, LLC;  National**
6  **Semiconductor Corporation;  Fairchild Semiconductor International,**
**Inc.No. 07-1849.   Decided: October 1, 200**
7

8  *According to the statute itself, the purpose of section 16(b) is "preventing the unfair use*
*of information which may have been obtained by such beneficial owner, director, or*
9  *officer by reason of his relationship to the issuer." 15 U.S.C. § 78p(b). The statute*
*authorizes the SEC to promulgate rules and regulations exempting from liability*
10  *transactions that are "not comprehended within[this] purpose." Id.;  see Levy I, 314*
*F.3d at 112. Exercising this authority, the SEC has established a number of section 16(b)*
11  *exemptions. See 17 C.F.R.§§ 240.16b-1, .16b-3, .16b-5 to .16b-8 (codifying SEC Rules*
*16b-1, 16b-3, and 16b-5 to 16b-8).*
12

13

14

15  <u>PARTIES</u>

16  •     Plaintiff, John Olagues, shareholder of Applied Materials Inc.

17
•     Defendant Gary Dickerson President and CEO of Applied Materials Inc.
18

19  •     Defendant,  Applied Materials Inc.

20

21  6.  Applied Materials Inc, Common Stock is registered with the SEC pursuant to
Section 12 of the Exchange Act and the Common Stock trades on the NASDAQ
22  under the symbol AMAT.

23

24  7. Applied Materials Inc. is a necessary party as this action is brought by Plaintiff in
25  order to obtain a recovery for the firm, Applied Materials Inc.

26

27

28                                                   3

1
2
3

## JURISDICTION AND VENUE

4
5

8. Jurisdiction of this Court is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. §78aa].

6
7

9. Venue is properly laid in this District because Defendant, Gary Dickerson is located in this District.

8
9
10

## SUBSTANTIVE ALLEGATIONS

11
12
13
14

10. The relevant transactions shown on Form 4s filed with the SEC by Defendant Gary Dickerson are listed below: The Documents from SEC Form 4s, attached as **Exhibit A,** show the relevant filings by Defendant Gary Dickerson, who was the CEO when the purchases and dispositions illustrated below were made. The purchases of the 40,000 Applied Materials shares by Mr. Dickerson were market purchases and not exempt from 16 (b). This is conceded by defendants.

15
16

**Gary Dickerson CEO and President**

17
18
19
20
21

| Shares Purchased | Date | Price | Shares Disposed | Date | Price | Profit |
|---|---|---|---|---|---|---|
| 30,000 | 9/24/2015 | $14.34 | 30,000 | 6/19/2015 | $19.72 | $161,400 |
| 10,000 | 8/21/2015 | $15.68 | 10,000 | 6/19/2015 | $19.72 | $40,040 |
| | | | | | Total Profits...................$201,440 | |

22
23
24

The shares disposed of on 6/19/2015 are shares received from the vesting of Restricted Stock.

25
26
27
28

4

1
2
3
4

Below is a paragraph from the Applied Materials

Restricted Stock Agreement

See Exhibit C

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

7. <u>Withholding of Taxes</u>. **The Company (or the employing Affiliate) will withhold a portion of the Shares that have an aggregate market value sufficient to pay federal, state and local income,** employment and any other applicable taxes required to be withheld by the Company or the employing Affiliate with respect to the Shares, **unless the Company, in its sole discretion, requires the Employee to make alternate arrangements satisfactory to the Company for such withholdings in advance of the arising of any withholding obligations**. The number of Shares withheld pursuant to the prior sentence will be rounded up to the nearest whole Share, with no refund for any value of the Shares withheld in excess of the tax obligation as a result of such rounding. Notwithstanding any contrary provision of this Agreement, no Shares will be issued unless and until satisfactory arrangements (as determined by the Company) will have been made by the Employee with respect to the payment of any income and other taxes which the Company determines must be withheld or collected with respect to such Shares. In addition and to the maximum extent permitted by law, **the Company (or the employing Affiliate) has the right to retain without notice from salary or other amounts payable to the Employee, cash having a sufficient value to satisfy any tax withholding obligations that the Company determines cannot be satisfied through the withholding of otherwise deliverable** Shares. All income and other taxes related to the Restricted Stock award and any Shares delivered in payment thereof are the sole responsibility of the Employee.

20  The SEC staff to a Question and Answer #123.16 on May 23, 2007:
21  **See Exhibit B**

22  **Question**: Would approval of a grant that by its terms provides for automatic
23  reloads for the reload grants?
24  **Answer**: Yes. Approval of a grant that by its terms provides for automatic reloads
    **would satisfy the specificity of approval requirements under Rule
25  16b-3(d)** for the reload grants, unless the automatic reload feature permitted the
26  reload grants to be withheld by the issuer on a discretionary basis.
    The same result applies under Rule 16b-3(e) where the automatic feature is a tax-
27  or exercise-withholding right. [May 23, 2007]
28

1

2   Essentially the SEC staff is saying that when the issuer, has discretion, as we have
3   here, there is no **satisfaction of the specificity of approval requirements under Rule 16b-3(e)**

4   Romeo and Dye expressed their views about the above Q and A as below:

5
6   **(6) Issuer Discretion To Disallow Stock Withholding, Surrender, Or Delivery**
7   **May Call Into Question Availability Of Rule 16b-3(e).** The staff (of the SEC)
    has taken the position that a net exercise or tax withholding transaction that is
8   subject to issuer discretion would require specific approval of individual
9   transaction in order for the Rule 16b-3(e) exemption to be available.

10
11  See *Compliance and Disclosure Interpretations, Exchange Act Section 16 and
    Related Rules and Forms,* Q. 123.16 (May 23, 2007). Apparently the staff is
12  concerned that the issuer's discretion means the board or committee delegated to
    management the decision whether to approve withholding, rather than making the
13  decision itself.
14

15   Issuers might consider assuring the availability of the exemption by
     (i) eliminating the discretionary feature and making the right entirely elective on
16  the part of the insider,
17  (ii) having the administering committee adopt a resolution providing that
    withholding is permissible unless the committee (not management) concludes that
18  it should not be permitted in a particular case, or
19  (iii) having the committee establish clear guidelines for management's
    disallowance of withholding, so that the decision by management is ministerial
20  rather than discretionary.
21
22  **Different Matchings of purchases and sales.**
23  If the purchases were matched with the sale (disposition) of the shares received
    from performance shares vesting on 12/19/2015, the transactions below would
24  indicate different recoverable profits. See below:
25

26                                          6

27

28

**Gary Dickerson CEO and President**

| Shares Purchased | Date | Price | Shares Disposed | Date | Price | Profit |
|---|---|---|---|---|---|---|
| 30,000 | 9/24/2015 | $14.34 | 30,000 | 12/19/2015 | $18.10 | $112,800 |
| 10,000 | 8/21/2015 | $15.68 | 10,000 | 12/19/2015 | $18.10 | $24,200 |
| | | | | Total Profits................$137,000 | | |

These shares that were sold/disposed to the issuer on 12/19/2015 were performance shares.

On 12/19/2015, there was no income calculation or tax liability at the time of vesting since IRC 83-c-3 deferred the income calculation and tax . There was no approval of tax withholding for a tax liability that is premature and therefore the dispositions could not be exempt from Section 16 (b). Below is a quote from the Ninth Circuit Court of Appeals in Strom v. U.S. on the deference of the tax liability pursuant to IRC 83 c-3.

 BERZON, Circuit Judge:
*Ordinarily, when an employee is compensated with nonstatutory stock options that do not have a readily ascertainable fair market value at the time of the grant, the employee realizes income for tax purposes upon exercising the options.1 See 26 U.S.C. §§ 83(a) & (e)(3)-(e)(4); 26 C.F.R. § 1.83-7(a). The taxpayer is taxed on an amount equal to the fair market value of the stock on the date of exercise minus the option price paid for the stock. See 26 C.F.R. §1.83-1(a)(1); id. §1.83- 7(a)*

 *Internal Revenue Code § 83(c)(3), however, allows taxpayers to defer recognition and valuation of income so long as a profitable sale of the stock acquired through the exercise of the options "could subject a person to suit under section 16(b) of the Securities Exchange Act of 1934." 26 U.S.C. § 83(c)(3).*

*Section 16(b), in turn, forbids a corporate insider from profiting on a purchase made within six months of a sale (or a sale made within six months of a purchase) of the corporation's stock. See 15 U.S.C. § 78p(b). If a taxpayer is permitted to defer tax consequences under IRC § 83(c)(3), the taxpayer will be later taxed on an amount equal to the fair market value of the stock on the date that § 83(c)(3) no longer applies minus the option price paid for the stock. See 26 U.S.C. § 83(a); 26 C.F.R. § 1.83-1(a)(1)*

7

The non-exempt disposition of the 40,000 shares of Applied Materials that are matched with the non exempt purchases is indicated by Code "F" inserted into column 3 of Table 1 of the SEC Form 4s.

Entrance of Code "F" in this case, indicates that the dispositions are to pay tax liabilities by the company withholding shares incident to the grants that were allegedly approved by the Board or a Committee and satisfy the approval requirements of SEC Rule 16 b-3.  Code "F" does not indicate that the dispositions from Mr Dickerson to Applied Materials have approvals that satisfy the specificity requirements of Rule 16 b-3(e).

Had Mr Dickerson inserted "D", he would be claiming that the discretionary withholding of shares by the issuer for tax withholding was approved by the Board or Compensations Committee that may lead to an exemption from Section 16 (b) via approval by Rule 16 b-3(e).

**Three Year Graph**

Below is a 3 year graph showing the stock prices when the purchases and sales were made

**AMAT**        P means purchases and S/D means sales



S/D     P     S/D

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## BASIS FOR INFORMATION AND BELIEF

14. Plaintiffs' information and belief is based on, among other things, the SEC Form 4s referenced herein in **Exhibit A** and the violations of the Securities law as described above.

15. Also the SEC Staff opinion expressed in the Q and A, No.123.16 of May 23, 2007 supports Plaintiffs' view that when the issuer has discretion whether to accept or reject the share dispositions, there is no approval under SEC Rule 16 b-3(e). See **Exhibit B.** Issuer discretion is clearly present in the Applied Materials Stock Incentive Plan documents and Grant Agreements for the disposition from Mr. Dickerson to the issuer and can not be approved pursuant to rule 16 b-3(e). See **Exhibit C** containing paragraphs from the Incentive Plan and the Grant Agreement.

## ALLEGATIONS AS TO DEMAND

16. Plaintiffs notified  Applied Materials Inc of the facts alleged above (the "Demand"). Attorneys for  Applied Materials Inc. refused to request disgorgement of the profits from  Mr. Dickerson and refused to file suit to recover such profits totaling   $201,440 on behalf of  Applied Materials Inc.

17. The attorneys for Applied Materials  Inc. in a letter to Plaintiff, alleged that the disposition from Mr.  Dickerson to Applied Materials Inc was exempt from Section 16 b of the 1934 Act via SEC Rule 16 b-3(e) and thus the attorneys alleged that the disposition of  shares on 6/19/2015  or on 12/19/2015 could not be matched with any of the market purchases of shares on 9/24/2015 or 8/21/2015.

## PRAYER FOR RELIEF

18. WHEREFORE, Plaintiff prays for judgment against Defendant,  CEO Gary Dickerson in an amount to be determined at trial, plus prejudgment interest, post-judgment interest and such other and further relief as this Court may deem just and proper.

9

19. The amount to be at a minimum of $ 201,440 which is the total profit received from matched non exempt purchases and non exempt dispositions.


Respectfully Submitted


John Olagues

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit A

SEC Form 4s with Code "P" for purchase and "F" for
sale/disposition for taxes

SEC Form 4

**FORM 4**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden | |
| hours per response: | 0.5 |

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Issuer Name **and** Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) | | |
|---|---|---|---|---|
| DICKERSON GARY E | APPLIED MATERIALS INC /DE [ AMAT ] | X   Director | | 10% Owner |
| (Last)   (First)   (Middle) | | X   Officer (give title below) | | Other (specify below) |
| C/O APPLIED MATERIALS, INC. P.O. BOX 58039, 3050 BOWERS AV, M/S 1268 | 3. Date of Earliest Transaction (Month/Day/Year) 08/21/2015 | President and CEO | | |
| (Street) SANTA CLARA   CA   95054 | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) | | |
| | | X   Form filed by One Reporting Person | | |
| (City)   (State)   (Zip) | | Form filed by More than One Reporting Person | | |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 08/21/2015 | | P | | 10,000 | A | $15.68 | 1,511,887(1) | D | |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
**(e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. Number of shares includes 846,287 performance shares previously reported that in the future will be converted on a one-for-one basis into shares of Applied Materials, Inc. common stock upon vesting, which vesting is scheduled to occur as follows: (a) 175,000 shares are scheduled to vest in July 2016; (b) 300,000 shares are scheduled to vest in installments in December of 2015 and 2016; and (c) 371,287 shares will be scheduled to vest in installments in December 2015 through 2018, which number of shares is the target amount, and the actual number of shares that may vest ranges from 0% to 150% of the target amount, depending on achievement of specified performance goals (all vesting is subject to continued employment through each applicable vest date).

/s/ Harpreet S. Bal, Attorney-in-Fact            08/24/2015

** Signature of Reporting Person            Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

SEC Form 4

**FORM 4**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden | |
| hours per response: | 0.5 |

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. See Instruction 1(b).

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* <br><br> DICKERSON GARY E <br><br> (Last)       (First)       (Middle) <br><br> C/O APPLIED MATERIALS, INC. <br> P.O. BOX 58039, 3050 BOWERS AV, M/S 1268 <br><br> (Street) <br><br> SANTA CLARA    CA    95054 <br><br> (City)    (State)    (Zip) | 2. Issuer Name **and** Ticker or Trading Symbol <br><br> APPLIED MATERIALS INC /DE [ AMAT ] <br><br> 3. Date of Earliest Transaction (Month/Day/Year) <br> 09/24/2015 <br><br> 4. If Amendment, Date of Original Filed (Month/Day/Year) | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) <br><br> X   Director       10% Owner <br> X   Officer (give title below)   Other (specify below) <br><br> President and CEO <br><br> 6. Individual or Joint/Group Filing (Check Applicable Line) <br><br> X   Form filed by One Reporting Person <br> ☐   Form filed by More than One Reporting Person |

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 09/24/2015 | | P | | 30,000 | A | $14.34 | 1,542,362(1) | D | |

## Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
### (e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. Increased number of shares reflects periodic payroll acquisitions under the Employees' Stock Purchase Plan that are exempt under Rule 16a-10 and Rule 16b-3. Number of shares includes 846,287 performance shares previously reported that in the future will be converted on a one-for-one basis into shares of Applied Materials, Inc. common stock upon vesting, which vesting is scheduled to occur as follows: (a) 175,000 shares are scheduled to vest in July 2016; (b) 300,000 shares are scheduled to vest in installments in December of 2015 and 2016; and (c) 371,287 shares will be scheduled to vest in installments in December of 2015 through 2018, which number of shares is the target amount, and the actual number of shares that may vest ranges from 0% to 150% of the target amount, depending on achievement of specified performance goals (all vesting is subject to continued employment through each applicable vest date).

/s/ To-Anh Nguyen, Attorney-in-Fact          09/25/2015

** Signature of Reporting Person          Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, see Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations See 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, see Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

SEC Form 4

| | | |
|---|---|---|
| **FORM 4** | **UNITED STATES SECURITIES AND EXCHANGE COMMISSION**<br>Washington, D.C. 20549 | OMB APPROVAL |

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden | |
| hours per response: | 0.5 |

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person`*`<br>**DICKERSON GARY E** | 2. Issuer Name **and** Ticker or Trading Symbol<br>**APPLIED MATERIALS INC /DE [** AMAT **]** | 5. Relationship of Reporting Person(s) to Issuer<br>(Check all applicable) |
|---|---|---|

| (Last)         (First)         (Middle)<br>C/O APPLIED MATERIALS, INC.<br>P.O. BOX 58039, 3050 BOWERS AVENUE, M/S | 3. Date of Earliest Transaction (Month/Day/Year)<br>07/01/2015 |
|---|---|

Relationship (Check all applicable):
- X Director
- 10% Owner
- X Officer (give title below)
- Other (specify below)

President and CEO

| (Street)<br>SANTA CLARA    CA    95054 | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line)<br>X Form filed by One Reporting Person<br>Form filed by More than One Reporting Person |
|---|---|---|

| (City)         (State)         (Zip) | | |

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 07/01/2015 | | A | | 60,000[1] | A | $0.00 | 1,653,142 | D | |
| Common Stock | 07/01/2015 | | F | | 151,255[2] | D | $19.51 | 1,501,887[3] | D | |

## Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. Represents performance shares acquired based on deemed achievement of specified performance goals related to performance shares granted on June 19, 2012. This acquisition is exempt under Rule 16b-3. The shares are subject to vesting as follows: 45,000 shares vested on July 1, 2015 and 15,000 shares are scheduled to vest on July 1, 2016 (vesting subject to continued employment through the vest date).

2. Represents shares that were automatically withheld upon vesting of performance shares to cover tax withholding obligations in a transaction exempt under Rule 16b-3.

3. Number of shares includes 846,287 performance shares that in the future will be converted on a one-for-one basis into shares of Applied common stock upon vesting, which vesting is scheduled to occur as follows: (a) 175,000 shares are scheduled to vest in July 2016; (b) 300,000 shares are scheduled to vest in installments in December of 2015 and 2016; and (c) 371,287 shares that will be scheduled to vest in installments in December of 2015 through 2018, which number of shares is the target amount, and the actual number of shares that may vest ranges from 0% to 150% of the target amount, depending on achievement of specified performance goals (all vesting is subject to continued employment through each applicable vest date).

**Remarks:**

/s/ Harpreet S. Bal, Attorney-in-Fact          07/06/2015

** Signature of Reporting Person          Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.

SEC Form 4

**FORM 4**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden | |
| hours per response: | 0.5 |

☐ Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| 1. Name and Address of Reporting Person* | 2. Issuer Name **and** Ticker or Trading Symbol | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|---|---|
| **DICKERSON GARY E** | **APPLIED MATERIALS INC /DE** [ AMAT ] | X Director — 10% Owner |
| (Last)      (First)      (Middle) | 3. Date of Earliest Transaction (Month/Day/Year) | X Officer (give title below) — Other (specify below) |
| C/O APPLIED MATERIALS, INC. P.O. BOX 58039, 3050 BOWERS AV, M/S 1268 | 06/19/2015 | President and CEO |
| (Street) SANTA CLARA   CA   95054 | 4. If Amendment, Date of Original Filed (Month/Day/Year) | 6. Individual or Joint/Group Filing (Check Applicable Line) |
| | | X Form filed by One Reporting Person |
| (City)   (State)   (Zip) | | Form filed by More than One Reporting Person |

## Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 06/19/2015 | | F | | 59,422(1) | D | $19.72 | 1,593,142(2) | D | |

## Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned
(e.g., puts, calls, warrants, options, convertible securities)

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. Represents number of shares that were automatically withheld upon vesting of restricted stock to cover tax withholding obligations in a transaction exempt under Rule 16b-3.

2. Increased number of shares reflects periodic payroll acquisitions under Employees' Stock Purchase Plan that are exempt under Rule 16a-10 and Rule 16b-3. Number of shares includes 1,066,287 performance shares that in the future will be converted on a one-for-one basis into shares of Applied common stock upon vesting, which vesting is scheduled to occur as follows: (a) 245,000 shares are scheduled to vest in installments in July 2015 and 2016; (b) 150,000 shares will be scheduled to vest in installments in July 2015 and 2016, which number of shares is the target amount, and the actual number of shares that may vest ranges from 0% to 140% of the target amount, depending on achievement of specified performance goals; (c) 300,000 shares are scheduled to vest in installments in December 2015 and 2016; and (d) 371,287 shares that will be scheduled to vest in installments in December 2015 through 2018, which number of shares is the target amount, and the actual number of shares that may vest ranges from 0% to 150% of the target amount, depending on achievement of specified performance goals (all vesting is subject to continued employment through each applicable vest date).

/s/ Harpreet S. Bal, Attorney-in-Fact   06/23/2015

** Signature of Reporting Person   Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

** Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

SEC Form 4

**FORM 4**

Check this box if no longer subject to Section 16. Form 4 or Form 5 obligations may continue. *See* Instruction 1(b).

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**STATEMENT OF CHANGES IN BENEFICIAL OWNERSHIP**

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934
or Section 30(h) of the Investment Company Act of 1940

| OMB APPROVAL | |
|---|---|
| OMB Number: | 3235-0287 |
| Estimated average burden | |
| hours per response: | 0.5 |

| 1. Name and Address of Reporting Person* <br> **DICKERSON GARY E** <br><br> (Last)          (First)          (Middle) <br> C/O APPLIED MATERIALS, INC. <br> P.O. BOX 58039, 3050 BOWERS AV, M/S 1268 <br><br> (Street) <br> SANTA CLARA   CA   95054 <br><br> (City)          (State)          (Zip) | 2. Issuer Name **and** Ticker or Trading Symbol <br> **APPLIED MATERIALS INC /DE** [ AMAT ] <br><br> 3. Date of Earliest Transaction (Month/Day/Year) <br> 12/19/2015 <br><br> 4. If Amendment, Date of Original Filed (Month/Day/Year) | 5. Relationship of Reporting Person(s) to Issuer (Check all applicable) <br> X  Director                    10% Owner <br> X  Officer (give title          Other (specify <br>     below)                       below) <br>       President and CEO <br><br> 6. Individual or Joint/Group Filing (Check Applicable Line) <br> X  Form filed by One Reporting Person <br>     Form filed by More than One Reporting Person |

**Table I - Non-Derivative Securities Acquired, Disposed of, or Beneficially Owned**

| 1. Title of Security (Instr. 3) | 2. Transaction Date (Month/Day/Year) | 2A. Deemed Execution Date, if any (Month/Day/Year) | 3. Transaction Code (Instr. 8) | | 4. Securities Acquired (A) or Disposed Of (D) (Instr. 3, 4 and 5) | | | 5. Amount of Securities Beneficially Owned Following Reported Transaction(s) (Instr. 3 and 4) | 6. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 7. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Code | V | Amount | (A) or (D) | Price | | | |
| Common Stock | 12/19/2015 | | F | | 134,159[1] | D | $18.1 | 1,884,142[2] | D | |

**Table II - Derivative Securities Acquired, Disposed of, or Beneficially Owned**
**(e.g., puts, calls, warrants, options, convertible securities)**

| 1. Title of Derivative Security (Instr. 3) | 2. Conversion or Exercise Price of Derivative Security | 3. Transaction Date (Month/Day/Year) | 3A. Deemed Execution Date, if any (Month/Day/Year) | 4. Transaction Code (Instr. 8) | | 5. Number of Derivative Securities Acquired (A) or Disposed of (D) (Instr. 3, 4 and 5) | | 6. Date Exercisable and Expiration Date (Month/Day/Year) | | 7. Title and Amount of Securities Underlying Derivative Security (Instr. 3 and 4) | | 8. Price of Derivative Security (Instr. 5) | 9. Number of derivative Securities Beneficially Owned Following Reported Transaction(s) (Instr. 4) | 10. Ownership Form: Direct (D) or Indirect (I) (Instr. 4) | 11. Nature of Indirect Beneficial Ownership (Instr. 4) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Code | V | (A) | (D) | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | | |

**Explanation of Responses:**

1. Represents number of shares that were automatically withheld upon vesting of performance shares to cover tax withholding obligations in a transaction exempt under Rule 16b-3.

2. Number of shares includes 1,079,405 performance shares previously reported that in the future will be converted on a one-for-one basis into shares of Applied Materials, Inc. common stock upon vesting, which vesting is scheduled to occur as follows: (a) 175,000 shares are scheduled to vest in July 2016, (b) 150,000 shares are scheduled to vest in December 2016, (c) 278,466 shares are scheduled to vest in installments in December of each of 2016 through 2018, with up to an additional 185,644 shares that may vest, depending on achievement of specified performance goals, and (d) 475,939 shares will be scheduled to vest in installments in December of each of 2016 through 2019, which number of shares is the target amount, and the actual number of shares that may vest ranges from 0% to 150% of the target amount, depending on achievement of specified performance goals (all vesting is subject to continued employment through each applicable vest date).

/s/ Harpreet S. Bal, Attorney-in-Fact     12/22/2015

\*\* Signature of Reporting Person     Date

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\* If the form is filed by more than one reporting person, *see* Instruction 4 (b)(v).

\*\* Intentional misstatements or omissions of facts constitute Federal Criminal Violations *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note: File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB Number.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit B

SEC Staff Q and A

1
2
3
4
5
6
7
8

9  **Q and A to and from Staff of the SEC**

10  Question: Would approval of a grant that by its terms provides for automatic reloads
11  satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload
    grants?
12
13  Answer: Yes. Approval of a grant that by its terms provides for automatic reloads would
    satisfy the specificity of approval requirements under Rule 16b-3(d) for the reload
14  grants, **unless the automatic reload feature permitted the reload grants to be**
15  **withheld by the issuer on a discretionary basis.**

16  **The same result applies under Rule 16b-3(e) where the automatic feature is a tax-**
17  **or exercise-withholding right. [May 23, 2007]**

18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit C

## Tax withholding paragraphs

**Applied Materials Stock Incentive Plan**

SECTION 15   TAX WITHHOLDING

15.1 Withholding Requirements. Prior to the delivery of any Shares or cash pursuant to an Award (or exercise thereof), or at such earlier time as the Tax Obligations are due, the Company shall have the power and the right to deduct or withhold, or require a Participant to remit to the Company, an amount sufficient to satisfy all Tax Obligations.

15.2 Withholding Arrangements. The Committee, **in its sole discretion** and pursuant to such procedures as it may specify from time to time, **may designate the method or methods by which a Participant may satisfy such Tax Obligations.** As determined by the Committee in its discretion from time to time, these methods may include one or more of the following: **(a) paying cash, (b) electing to have the Company withhold otherwise deliverable cash or Shares having a Fair Market Value equal to the amount required to be withheld, (c) delivering to the Company already-owned Shares having a Fair Market Value equal to the minimum amount required to be withheld or remitted,** provided the delivery of such Shares will not result in any adverse accounting consequences as the Committee determines in its sole discretion, **(d) selling a sufficient number of Shares otherwise deliverable to the Participant through such means as the Committee may determine in its sole discretion (whether through a broker or otherwise) equal to the Tax Obligations required to be withheld, (e) retaining from salary or other amounts payable to the Participant cash having a sufficient value to satisfy the Tax Obligations, or (f) any other means which the Committee, in its sole discretion, determines to both comply with Applicable Laws, and to be consistent with the purposes of the Plan.** The amount of Tax Obligations will be deemed to include any amount that the Committee agrees may be withheld at the time the election is made, not to exceed the amount determined by using the maximum federal, state or local marginal income tax rates applicable to the Participant or the Company, as applicable, with respect to the Award on the date that the amount of tax or social insurance liability to be withheld or remitted is to be determined. The Fair Market Value of the Shares to be withheld or delivered shall be determined as of the date that the Tax Obligations are required to be withheld.

**Restricted Stock Agreement**

7. <u>Withholding of Taxes</u>. **The Company (or the employing Affiliate) will withhold a portion of the Shares that have an aggregate market value sufficient to pay federal, state and local income**, employment and any other applicable taxes required to be withheld by the Company or the employing Affiliate with respect to the Shares, **unless the Company, in its sole discretion, requires the Employee to make alternate arrangements satisfactory to the Company for such withholdings in advance of the arising of any withholding obligations**. The number of Shares withheld pursuant to the prior sentence will be rounded up to the nearest whole Share, with no refund for any value of the Shares withheld in excess of the tax obligation as a result of such rounding. Notwithstanding any contrary provision of this Agreement, no Shares will be issued unless and until satisfactory arrangements (as determined by the Company) will have been made by the Employee with respect to the payment of any income and other taxes which the Company determines must be withheld or collected with respect to such Shares. In addition and to the maximum extent permitted by law, **the Company** (or the employing Affiliate) **has the right to retain without notice from salary or other amounts payable to the Employee**, **cash having a sufficient value to satisfy any tax withholding obligations that the Company determines cannot be satisfied through the withholding of otherwise deliverable Shares**. All income and other taxes related to the Restricted Stock award and any Shares delivered in payment thereof are the sole responsibility of the Employee

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**From the Applied Material Performance shares**

8. Withholding of Taxes. If any tax withholding is required, when Shares are issued as payment for vested Performance Shares or, in the discretion of the Company, such earlier time as the tax withholding obligations are due, the Company (or, if the Grantee has become an employee of an Affiliate, the employing Affiliate), will withhold a portion of the Shares that have an aggregate market value sufficient to pay federal, state and local income, employment and any other applicable taxes required to be withheld by the Company (or the employing Affiliate) with respect to the Shares, **unless the Company, in its sole discretion, requires the Grantee to make alternate arrangements satisfactory to the Company for such withholdings in advance of the arising of any withholding obligations**. The number of Shares withheld pursuant to the prior sentence will be rounded up to the nearest whole Share, with no refund provided in the U.S. for any value of the Shares withheld in excess of the tax obligation as a result of such rounding. Notwithstanding any contrary provision of this Agreement, no Shares will be issued unless and until satisfactory arrangements (as determined by the Company) have been made by the Grantee with respect to the payment of any income and other taxes which the Company determines must be withheld or collected with respect to such Shares. In addition and to the maximum extent permitted by law, the Company (or the employing Affiliate) has the right to retain without notice from any fees, salary or other amounts payable to the Grantee, cash having a sufficient value to satisfy any tax withholding obligations that the Company determines cannot be satisfied through the withholding of otherwise deliverable Shares or that are due prior to the issuance of Shares under the Performance Share award. All income and other taxes related to the Performance Shares award and any Shares delivered in payment thereof are the sole responsibility of the Grantee.